SUGAR RUN COAL MINING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9236.    Promulgated April 16, 1928.

*R. P. Smith, Esq.*, for the petitioner.
*C. T. Brown, Esq.*, for the respondent.

590

OPINION.

SMITH: 1. The first allegation of error is that the collection of any additional tax for the year 1917 is barred by the statute of limitations inasmuch as more than five years elapsed from the date the return was filed to the date of the determination of any deficiency for the year 1917. It is submitted that there was no proceeding, administrative or judicial, started against the petitioner within the original five-year period that would protect the rights of the Government against the running of the statute of limitations.

The Board has previously held that a waiver which consents to an extension of the time for the making of an assessment also extends the time for collection even though collection is not mentioned in the consent filed. *Farmers' Co-operative Milk Co.*, 9 B. T. A. 696. We have also held that the fact that five years expired from the date of the filing of the return to the date of the signing of a consent in no way affects the liability of a taxpayer to pay a tax. *Joy Floral Co.*, 7 B. T. A. 800. In *Friend M. Aiken*, 10 B. T. A. 553, we held that where the Commissioner made a jeopardy assessment in March, 1925, and at a time when both the assessment and collection of the tax were barred by the statute of limitations, and where in February, 1926, the taxpayer and the Commissioner executed a consent extending the period within which assessment might be made to December 31, 1926, and where the Commissioner finally determined the deficiency in October, 1926, and where an appeal was lodged with the Board within sixty days thereafter, the assessment and collection of the tax were not barred by the statute of limitations. That case is parallel with the case at bar except that in the present case the petition was filed prior to the execution of the consent. This, however, in no way distinguishes the cases and the reasoning of the Board to the effect that a subsequent assessment would have been useless applies with equal force to the filing of a subsequent petition. On the authority of the *Aiken* decision it must be held that the collection of the deficiency for the year 1917 is not barred by the statute of limitations.

2. The petitioner alleges that the respondent erroneously disallowed the deduction from gross income. of $4,000 paid in 1917 to stockholder directors as compensation for services rendered. The taxing statute permits the deduction from gross income of:

All the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties, including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity. (Sec. 12 (a) First, Revenue Act of 1916.)

The respondent has disallowed the deduction of the $4,000 in question on the ground that it did not constitute ordinary and necessary expenses. It was paid to stockholder directors. The testimony in regard to the payment is a deposition of B. F. MacCartney, reading as follows:

Q. 7. Do you know of your own knowledge what services these men rendered to the Sugar Run Coal Mining Co., in 1917?

Ans. W. D. Clark, B. D. Wilmoth and Ralph Wright lived at Glen Campbell, Penna., where the Sugar Run Coal Mining Co., owned the track of timber land, which they operated and furnished us with mine timber. John W. Clark lived in Philadelphia, where most of our coal was sold, and in connection with

his duties in Clark Bros. Coal Mining Company office, looked after our interests there.

Q. 8. Could you state about how much time these men devoted to the business of the company?

Ans. I could not state that definitely, inasmuch as they were engaged in other business, but would say that they would give considerable of their time, more or less possibly, every day.

Q. 9. Do you consider that the salary paid them was reasonable compensation for the services rendered, and not excessive?

Ans. I would say that the payment of $1,000.00 each was very reasonable, and certainly not excessive.

We can not determine from the foregoing that the amounts paid were anything more than a distribution of profits to the stockholders The petitioner has failed to produce evidence that the payments constituted ordinary and necessary expenses of operation. Upon the evidence the disallowance by the respondent is sustained.

3. The respondent determined that the petitioner realized a profit of $35,821.91 from the sale of assets in 1919. This was clearly in error. All that the petitioner was to receive for the assets which it sold was $32,500. The respondent assumed that the petitioner was to receive $65,000 from the sale of the assets. This was clearly $32,500 more than the actual profit even if it be assumed that the notes received in payment had a value equal to their face value. The petitioner has sought to prove that the notes did not have such value and has submitted the deposition of B. F. MacCartney, the president of the petitioner corporation, to the effect that the makers of the notes would never have been able to pay them if they had been called upon to do so. It appears, however, that the notes received by the petitioner were secured by the property of the petitioner and also that a lease held by B. F. MacCartney was also security for the notes since the lease was paid into the Bennington Coal Co. and the coal company assumed the obligations of the makers of the notes. Upon the record we are of the opinion that the consideration received by the petitioner in 1919 had a cash value as of the date of receipt of $32,500, and that the petitioner realized a profit of $3,321.91 from the sale. The petitioner had, however, a net loss for the year 1919.

4. The Commissioner not having determined any deficiency in tax for the year 1918, and the alleged net loss for 1919 not equaling the reported net income for 1918, the Board is without jurisdiction to determine that there was any overpayment of tax for 1918 by reason of the application against the net income of 1918 of a net loss for 1919. See section 274 (g), Revenue Act of 1926.

*Judgment will be entered on 15 days' notice, under Rule 50.*